WARD (CLAGGETT v.). See Case No. 2,-780.

## Case No. 17,153.

### WARD et al. v. The DOUSMAN.

[6 McLean, 231;[1] Newb. 236.]

Circuit Court, D. Illinois. Oct., 1854.

COLLISION—STEAMER OVERTAKING SAIL—EXCESSIVE SPEED—EVIDENCE—APPORTIONMENT OF DAMAGES.

1. In a collision which took place between a steamer and a schooner as they were entering the harbor of Chicago, the evidence shows that the schooner was ahead, and was sailing the channel usually taken by vessels when the wind was as at that time, and that the steamer attempted to pass, in a narrow space, between the schooner and the pier, without any considerable abatement of speed. This was a fault, and under the circumstances the steamer cannot maintain a libel for the injury done by the collision. The steamer should have allowed the schooner to continue her course without interruption, and if necessary should have stopped.

2. When it appears in a case of collision, one party is in fault, before a court of admiralty will allow any compensation by apportionment or otherwise to such party, the evidence must clearly show there was a fault on the other side. If it is conflicting so as to leave it doubtful, or if it should appear that there might be some slight mistake or error which was occasioned by the original flagrant fault of the first named, no apportionment will be made.

3. Whenever a sail vessel is entering upon difficult navigation, as approaching a harbor, &c., a steamer following should take extreme precaution to keep out of the way. A steamer is considered under command, and should avoid sail vessels; and this rule is to be enforced with peculiar strictness under the circumstances of this case.

[This was a libel by Samuel Ward, Eben B. Ward, and Thomas G. Butlin against the schooner M. Dousman to recover damages for injuries sustained by a collision.]

H. G. & E. S. Shumway, for libellant.
Mr. Goodrich, for claimant.

DRUMMOND, District Judge. This is a libel filed by the owners of the steamer Arctic. It alleges that the steamer, being about to enter the harbor of Chicago, on the 13th day of August, 1851, turned to pass around the north pier; that after the steamer commenced turning, the schooner M. Dousman, which was entering the harbor at the same time, with the wind free, and being on the easterly side of the steamer, negligently and improperly chan-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

ged her course, struck the steamer on the larboard side and damaged her to a considerable amount. It states that there was sufficient room and depth of water for the schooner to enter the harbor without changing her course northerly, and that with proper care on the part of the schooner the collision might have been avoided; that the steamer was so situated at the time the schooner approached, it was impossible for the Arctic to get out of the way: the steamer being between the schooner and the north pier. The owners of the Arctic claim compensation for the damages done by this collision.

The answer states that the schooner, loaded and drawing eight feet of water, with the wind north, was entering the harbor in the channel usually taken by vessels with such a wind; that at the mouth of the harbor, and south of the channel the vessel was sailing, there is shoal water—usually called the middle ground—on which the schooner would have been in danger of grounding and of being lost or injured, if she had kept too far south. That the Arctic, just after the M. Dousman had doubled the north pier, undertook to pass between the schooner and the pier; that in so doing she came in contact with the schooner and did some damage to the latter. The owner denies that the schooner changed her course more than was prudent to keep her off the middle ground, and that there was not sufficient room for the Arctic to pass between the schooner and the pier; and avers that the steamer ought to have been stopped or backed so as to allow the schooner to pass into the harbor.

There is the usual conflict of testimony in this case. In a collision between two vessels, there is generally an effort by those on board of one to cast the blame on the other. There are, however, some main facts in this case which cannot be controverted. The M. Dousman was a schooner under sail, with the wind about north, trying to make the harbor of Chicago by the north channel. The entrance to the harbor is quite narrow. At the time the schooner changed her course to run into the harbor, the Arctic was several hundred yards astern of the schooner. As the wind was then, vessels coming in by the north channel keep as near the north pier as they can with safety, on account of the current which sweeps around the pier. The Arctic, astern of the schooner, and herself about to make the harbor under a full head of steam, undertook to go to windward of the schooner, and between her and the north pier. Those who had the management of the steamer knew, or were bound to know, the risk they ran in attempting so very difficult and delicate a maneuver.

When we come to the details of the collision, we find great discrepancy in the evidence. According to those on the Arctic, no collision would have taken place if the schooner had not suddenly changed her course and luffed up across the line of the steamer, while according to those on the schooner the collision could not have been avoided, and whatever

change of course there was, was caused by a fear of striking the middle ground, a bad shoal lying near the mouth of the harbor. It seems that the helmsman of the schooner, when he saw the approach of the Arctic and the danger of a collision, kept the schooner away without any direction to that effect, whereupon the captain ordered him to keep the vessel straight and not mind the steamer. The people of the M. Dousman concur in saying that the vessel luffed to avoid grounding. Those on the Arctic, on the contrary, affirm there was plenty of room with good water to the southward of the course of the vessel. It is true that the schooner cannot escape the consequences of its own fault by showing that the steamer was also in fault, but I do not think it necessary to weigh and examine the testimony very minutely to determine whether there might not have been some trifling fault on the part of the schooner, because the faults of the steamer were so many and flagrant, that whatever error, if any, of the schooner there was, (and I am not prepared in this conflict of testimony to say there was any,) it might well be considered, under the circumstances, as trivial.

I think the weight of the evidence is, that the collision occurred as the Arctic was in the act of swinging as she changed her course to enter the harbor. All the witnesses on the schooner do not agree as to this; but the master of the brig Mary, which was a short distance behind, and about to enter the port, speaks particularly on this point, and his position gave him the best opportunity of judging. Besides, this conclusion is strengthened by the manner of the contact, and by the nature of the injury that was done to the steamer and to the schooner. The luffing up of the schooner may have contributed slightly to it, but it is not certain that the collision would not have taken place in any event. It would not be surprising if the helmsman of the schooner was a little alarmed when he saw the imminence of the danger, and should try to avoid it; nor that the captain, through an apprehension of running aground, should give an order to luff. These are niceties which need not be severely criticised. We must recollect that the captain of the schooner had a right to presume that the steamer would keep out of his way; and though we should hold him to the exercise of all reasonable skill and prudence, still we must judge of these by the light of the circumstances which surrounded him.

The first and second mate of the Arctic unite in giving it as their opinion that the checking bell was not rung, and that her speed, which had been from eight to twelve miles an hour, had not been slackened. It is true one of the men says that the checking bell was rung fifteen minutes before the collision; and yet this same witness declares, in another part of his testimony, that at that time they were only seventy or eighty feet from the pier. No reliance whatever can be placed on the evidence of this witness. He was examined before

me; and his whole manner indicated a total recklessness as to the facts, and his eagerness to screen the Arctic involved him in endless contradictions. It is manifest that the Arctic, whether her speed had been lessened or not, was going at too rapid a rate. It would be attended with very ruinous consequences to sanction such speed under such circumstances. Coming into a harbor with a narrow passage, right in the wake of another vessel, at a speed of ten miles an hour! Steamers cannot be too stringently held to caution and circumspection in this particular. They are constantly violating all the rules we adopt, and I do not feel disposed to relax those wholesome restraints which the courts have thrown around their management. The schooner was ahead, and had the right to choose her course; in this instance, with the wind north, it was her only course. It was the duty of the steamer to keep out of the way of the schooner; and there can be no doubt it was a gross fault for the steamer to attempt, under the circumstances, to pass between the schooner and the north pier. This is the opinion of the nautical witness who has been examined on that point, and I concur fully in its correctness. It was attended with great risk and peril in every aspect, as well to the steamer as to the schooner.

I think it may be laid down as the rule, without exception, that whenever a sail vessel is entering a harbor so difficult of access as that of Chicago, a steamer following should take extreme precaution to keep out of the way of such vessel, and, if need be, stop entirely. It is the only safe rule. The general rule applicable to steamers is, that they are always considered under command, and should keep out of the way of sailing vessels; and it seems to me this rule should be enforced with peculiar strictness upon a steamer situated as the Arctic was in this case.

If this were a libel promoted by the owners of the M. Dousman, I should have no hesitation in awarding to them compensation for the damage their vessel sustained, as it is, I dismiss the libel with costs.