## OWNERS OF STEAMBOAT FARMER *vs.* McCRAW.

1. When an attachment is sued out against a steamboat to recover damages for injuries caused by her running into a flat-boat, (Pamphlet Acts 1843-4, p. 98,) the declaration must be against the boat itself, and not against the owners, although the attachment bond is made payable to the owners, and their names are also stated in the affidavit on which the attachment was issued.

2. The refusal of the primary court to strike from the files declaration against the owners of the boat, is a reversible error.

3. Proper practice prescribed for declaring against boat under this statute, and for the intervention of her owners.

4. The proceedings under this statute, except so far as they are changed by the act itself, must be governed by the rules of the common law; and therefore any facts which would defeat an action on the case against the owners at common law will have the same effect when pleaded to proceedings against the boat.

5. The general rule of the common law is, that if both vessels are to blame, neither can recover damages for injuries caused by the collision; but this rule applies only to faults which operated directly and immediately to produce the collision.

6. There is no inflexible rule, either of the river or of the road, the neglect of which by one party will dispense with the exercise of common caution by the other.

7. "Ordinary care" is altogether a relative term; and in such cases as this, the want of it means nothing more than the failure to use those precautions which a just regard to the persons and property of others demands should be used under the circumstances of each particular case.

8. A common carrier, as he is not absolved from liability to the owner of the goods by the torts of third persons, has a right to maintain an action for the wrong; and a recovery by him for the injury done to the goods will be a bar to a subsequent action by the owner for the damage or loss resulting from the same injury.

9. But where the owner of the lost or damaged goods brings his action against the owners of the boat which caused the loss or damage by running into the flat-boat on which the goods were, a plea of a former recovery by the common carrier for the injuries caused by the collision, "which (it avers) are the same injuries in the plaintiff's declaration alleged to have been done to the goods of the said plaintiff," is not equivalent to an averment that the recovery was for the damage done to the goods described in the declaration —*non constat*, that it may not have been for damages done to the goods of some other person which were on board the flat-boat at the same time; such a plea, therefore, is defective on demurrer.

10. The owner of the flat-boat, who had charge of her at the time of the collision, is not a competent witness for the owner of the damaged goods, in an action against the steamboat for damages; nor is he made a competent witness by the Code (§ 2302),

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. NAT. COOK.

THIS action was commenced in May, 1852, by attachment,
sued out by the appellee against the steamboat Farmer, to
recover damages for injuries done to seventy-eight bales of
cotton, belonging to the plaintiff, by a collision between the
steamboat and a flat-boat on which the cotton was shipped.
The affidavit, on which the attachment was issued, alleged
that the steamboat, at the time of the collision, "was com-
manded by Edward F. Shields, and claimed and owned by
said Shields, Jacob B. Walker, and Daniel Walker"; and the
attachment bond was made payable to them as such owners.
The attachment was issued by a justice of the peace, and was
made returnable to the then next ensuing term of the Circuit
Court of Dallas. The sheriff returned the writ, "Levied this
attachment, the 19th May, 1852, upon the steamboat called
the Farmer, with tackle and apparel, as the property of Ed.
F. Shields and others; which boat, with her tackle and ap-
parel, was returned to the possession of the said Ed. F.
Shields, upon his entering into bond, with security," &c.; and
the bond, which was returned with the writ, signed by said
Shields, J. B. Walker, Daniel Walker and others, was condi-
tioned that the obligors should pay, or cause to be paid, to
the said plaintiff, his heirs, &c., "such judgment as may be
rendered in such attachment proceedings, and shall further
pay all costs that may accrue on the trial of the same."

At the Fall term, 1852, of the Circuit Court, the plaintiff filed
his declaration, in which he "complains of Edward F. Shields,
Jacob B. Walker, and Daniel Walker, claimants and owners
of the steamboat called and named Farmer, which were
attached to answer the said plaintiff in a plea of trespass on
the case." The declaration contains two counts, of which the
first alleges, that plaintiff, at the time of the alleged collision,
which was in April, 1852, was the owner of seventy-eight
bales of cotton, which were shipped and freighted on a flat-
boat, belonging to Wm. McCullough and Alex. Brame, then
afloat in the Mobile river below the junction of the Tom-
beckbe, and bound for Mobile; that the defendants were, at
the same time, possessed of the said steamboat," and then and

there had the care, direction, and management thereof; yet the said defendants, not regarding their duty in that behalf," &c., "took so little and such bad care of their said steamboat, in the direction and management of the same, that the said steamboat, by and through the carelessness, misdirection, and mismanagement of the said defendants, then and there, with great force and violence, ran against the said flat-boat, with the said seventy-eight bales of cotton of said plaintiff, and thereby greatly broke, damaged, and injured the said flat-boat, and thereby the said seventy-eight bales of cotton of said plaintiff, then on board of said flat-boat, became and were greatly wetted, damaged, and injured," &c. The second count alleges, that, at the time of the collision, the defendants were possessed of the said steamboat, "and the said Edward F. Shields, as commander and captain, had the care, direction, and management of said steamboat; yet, not regarding his duty in that behalf," &c., "took so little and such bad care of the said steamboat, in the direction and management of the same, that the said steamboat, by and through the negligence, carelessness, and mismanagement of the said Edward F. Shields, commander and captain as aforesaid, then and there, with great force and violence, ran against the said flat-boat," &c.

The defendants craved oyer of the attachment, and demurred to the whole declaration, and also to each count separately; but their several demurrers were overruled. They then pleaded, 1st, not guilty; and, 2d, "that the running of the said steamboat against the said flat-boat, whereby the cotton of plaintiff, on board said flat-boat at the time, was injured, if injured at all, was caused partly by the fault, mismanagement and imprudence of the person or persons who had the direction and control of the said flat-boat, and not wholly by the mismanagement, or misdirection, or negligence, or carelessless, or fault of the person or persons who had the direction and control of the said steamboat at the time of the alleged trespass or injury." The court sustained a demurrer to this last plea, and the defendants then, by leave of the court, pleaded, "in short by consent," "that the negligence and imprudence of the person or persons who had the control and direction of the said flat-boat, on which the

plaintiff's said cotton was shipped and freighted at the time of the alleged injury to said cotton by the running or striking of said steamboat against said flat-boat, caused or contributed to the said collision between said boats, whereby the injury to plaintiff's cotton, as alleged in his declaration, if injured at all, was done"; and to this plea, also, the court sustained a demurrer. The defendants also filed a plea *puis darrein continuance*, in which they set up a recovery against the steamboat by the owners of the flat-boat, "which judgment (they aver) remains in full force, not having been set aside, or reversed, or in any manner annulled; and defendants aver, that the said attachment and judgment were and are for the injuries committed by the running or striking of the said steamboat against the said flat-boat, and are the same injuries which are in the plaintiff's declaration alleged to have been done to the said cotton of the said plaintiff; and so defendants say, that plaintiff ought not to recover in this case against defendant, for the reason that the recovery has been had against said steamboat for the said injuries in the plaintiff's declaration complained of." The plaintiff demurred also to this plea, and his demurrer was sustained.

On the trial, the defendants moved the court to strike the declaration from the files, on the ground that it was a departure from the writ of attachment; but the court overruled their motion, and the defendants excepted.

The plaintiff introduced one Wm. McCullough as a witness, who stated, on his *voir dire*, "that he was one of the owners of the flat-boat which was injured, and had command of it at the time of the collision; that he had given a bill of lading, or receipt, to the owners of the cotton, for the cotton on board the injured flat, and was to receive one dollar per bale for freight of the cotton to Mobile; and that he had a suit against these same defendants, pending in this court, for cotton of his own that was on the flat-boat and injured by the collision. On these facts appearing, it was objected by the defendants that said McCullough was incompetent from interest as a witness for plaintiff; but the objection was overruled, and the witness allowed to testify, and thereupon the defendants excepted."

The testimony in the case, which is all set out in the bill of

exceptions, is very voluminous ; but, as no question was re-
served touching any part of it, a brief statement of its sub-
stance, sufficient to explain the charges refused, is all that is
necessary.   On the part of the plaintiff, the following wit-
nesses were examined, viz., Wm. McCullough, who was the
commander of the flat-boat at the time of the collision ;
Nichols, Kinnard, and Zimmerman, who were all employed as
hands on the flat-boat at that time ; John Saunders, who was
on board the Farmer at the time of the collision, and was
looking out for the flat-boats at the time, as he had friends
on them ; and Sam'l Chesnut, who was in command of another
flat-boat which was lashed broadside to the flat on which
plaintiff's cotton was at the time of the collision.   According
to the testimony of these witnesses, the circumstances of the
collision were as follows :   The two flat-boats, which were
loaded with cotton and lashed broadside together, were float-
ing down the Mobile river, between eight and nine o'clock at
night, about a mile below the point where the Tensaw river
shoots off ; the river was about two hundred yards wide at
that point, and very crooked ; the night was dark and cloudy,
and a heavy rain fell soon after the collision ; the steamboat
was heard approaching some twenty or thirty minutes before
she came in sight, and lighted torches were then placed at the
outer corners of the flat-boats ; when the steamboat first came
in sight, she was from two to three hundred yards distant
from the flats, and seemed to be moving very rapidly ; the
flats were in the middle of the river, but there was room
enough on either side of them for the steamboat to pass ; the
steamer Lowndes, which had passed the Farmer a short time
before, had just passed them without touching ; the Farmer
attempted to pass on the right side, but her wheels struck the
corner of the outer flat, on which plaintiff's cotton was ; on
hearing the cry for help, the steamboat rounded to, and re-
turned, and, after carrying the flat to the shore, spent the night
in taking off the cotton and picking up what had fallen over-
board.

The defendant's witnesses were, one Agee, who was a pass-
enger on the Farmer at the time of the collision ; Stewart
George, who had been a pilot on the river for thirty years ;
S. P. George, who had been a steamboat pilot for three years,

13

and was pilot of the Brooklyn on the night of the collision, and came up with the Farmer soon after the accident had occurred; Charles Bell, and one Clayton, who had been on the river for several years as clerks on steamboats; Levi Cobb, who was one of the engineers of the Farmer; W. H. Pendarvis, who had been on the river as a pilot for thirty years, and was on the night of the collision the captain of the Sarah, which passed up the river soon after the occurrence; John Newton, first mate of the Farmer; William Holland, watchman; Walter C. Tuggle, who was in the pilot-house assisting the pilot; Alexander Shelton, who was at the helm; and James R. Ingram, who had been running the river as clerk and captain for eight or nine years. The testimony of these witnesses was, substantially, as follows: That the Farmer, at the time of the collision, had her full complement of officers and men, who were skilful and competent; that she was running at her usual speed, and was not racing with the Lowndes; that the Mobile river, for several miles below the point where the Tensaw shoots off, is very narrow, crooked, and difficult to navigate—its width at the point where the collision happened variously estimated from one hundred to one hundred and fifty yards; that the night was very dark and cloudy; that every effort was made by the steamboat, so soon as the torches were seen, to avoid the collision; that the collision was very slight, and was not sufficient to sink or injure a flat-boat of ordinary strength; that the timbers of the injured flat were not more than one-half the usual thickness, and the boat was not built as strongly as flat-boats usually are; that it is the usage and custom of flat-boats, on account of the risk and danger of navigating that part of the river by night, to tie up to the bank above the point where the river divides; that the danger is much increased by lashing two flat-boats broadside together, as it makes them more unmanageable, and leaves less space for boats to pass them; that all the steamboats navigating the Mobile river, ascending and descending, pass this narrow part of it at night, and on the night of the collision four boats passed.

To rebut a portion of the defendants' evidence, the plaintiff re-examined McCullough, Chesnut, and Kinnard, who testified, that they knew of no custom requiring flat-boats to tie

up to the bank for the night before entering the Mobile river, and had never done so themselves; and that the planks of the injured flat-boat were of the usual strength and thickness. It was proved, also, that Edward F. Shields, one of the owners of the Farmer, had command of her as captain at the time of the collision; that the plaintiff was the owner of the cotton sued for; its value; the amount of damage, &c.

On this proof, the defendants asked the following charges:

"1. If the jury believe from the evidence that the danger and risk of collision were increased by lashing the two flat-boats together, and that this contributed to the collision whereby the boat on which plaintiff's cotton was shipped and freighted was wrecked, then plaintiff cannot recover for any damage he may have sustained by the collision of the boats.

"2. If, at the time of the collision, the steamboat had a sufficient number of skilful and competent officers, and a proper and sufficient crew for the proper management of the boat; and if the officers and crew used ordinary care, prudence, and diligence to prevent and avoid a collision with the flat-boat,— then defendants are not liable for the consequences of the collision.

"3. If the jury believe from the evidence that the two flat-boats were lashed together, and thereby occupied a wider space in the river than was necessary, and that thereby the facility for the passage of steamboats safely was diminished, and the risk of collision increased; and that the lashing of the two flat-boats together did, in this case, increase the risk and danger of collision with the steamboat Farmer; and that, if the flat-boats had not been lashed together, the collision with the steamboat would have been avoided,—then the plaintiff is not entitled to recover.

"4. If the evidence shows that those who had the control and direction of the flat-boat on which plaintiff's cotton was, lashed it side by side with another flat-boat, and permitted the two flat-boats thus to float, on a dark night, in a narrow and crooked part of the river, where many steamboats were known to the managers of said flat-boats to be in the habit of passing at night, the managers of said flat-boats would be chargeable with a want of proper care and prudence, and the defendants would not be chargeable with the consequences of

the collision of said flat-boats with the steamboat, if the officers and crew of the steamboat exercised ordinary care and diligence to avoid and prevent the collision.

"5. If the jury believe from the evidence that one of the owners of the steamboat Farmer was on board of her, and in command of the boat as master at the time of the collision, then the plaintiff is not entitled to recover in this action.

"6. If the jury believe from the evidence that the night was very dark and cloudy, and that on such nights it was customary or the usage of flat-boats to tie up in the river above where the collision occurred; and that the failure of the flat-boats to do so contributed to the collision,—then the plaintiff is not entitled to recover."

The court refused each one of these charges, and the defendants excepted to each refusal.

The jury having returned a verdict for the plaintiff, assessing his damages at $705 59, the court thereon rendered judgment "that the said steamboat Farmer be condemned to the satisfaction of the plaintiff's debt and demand;" and further, "that the said plaintiff recover of and from the said Jacob B. Walker, Daniel Walker, Joseph Hunter, Moses Waring, and Stephen Twelves, the said sum of $705 59, the sum assessed as aforesaid, and the costs in this behalf expended."

The rulings of the court on the several demurrers, the refusal to strike the declaration from the files, the overruling of the objection to the competency of McCullough as a witness, the refusals to give the several charges requested, and the rendition of the judgment, are now assigned for error.

J. W. Lapsley, for the appellants:

1. The court erred in refusing to strike the declaration from the files. The plaintiff should have declared against the steamboat, and not against her owners. The statute, under which the action was instituted, only authorizes a proceeding *in rem*, and not *in personam*; and the declaration must follow the process.—1 Chitty's Pl. 279, 283; Otis v. Thorn, 18 Ala. 395. If the obligors in the bond should have been made defendants, still the declaration is defective: it does not conform to the bond, but omits several of the obligors.

2. The court erred, also, in overruling the demurrer to the

attachment and declaration. This assignment, in addition to the question presented by the first, raises this further question, Is there any authority for the action, either at common law, or by statute? The act of 1844 is void for uncertainty, and is an absurdity. It is a bundle of incongruities and absurdities: it makes no distinction between the parties who are in the right and those who are in the wrong, but gives a remedy to the owners of the injured boat, whether guilty or not; it does not provide against whom the declaration shall be filed, or who shall be parties defendant—whether, like a proceeding in admiralty, it shall be against the boat, or against her owners, or against the obligors in the bond; if no bond is given, it makes no provision for the disposition of the boat before or after the determination of the suit. If it is a proceeding *in rem*, it makes no provision for the release of the obligors in the bond after they have paid the value of the boat, but only provides that they may, upon application to a circuit judge, pay the value of the boat, and that the same shall be divided, *pro rata*, among the several suitors or judgments; but it does not provide that the obligors shall be thereby released. What, then, does it mean? Is it a proceeding *in rem?* or *in personam?* or both? It is a nondescript, without sense or meaning, and is therefore void.

3. The court erred, also, in the rendition of judgment. The statute does not authorize a judgment against the owners of the boat, nor against the obligors in the bond: it only authorizes an execution to issue on the bond.

4. The court erred, also, in sustaining the demurrers to the second and third pleas, which allege that the collision was partly caused by the fault, negligence, and mismanagement of those who had charge of the flat-boats. In maritime law, if both vessels are in fault, each must suffer its own loss, and the damages may be apportioned. The well-settled rule at common law is, that there can be no recovery when the plaintiff's boat was in fault in any degree; and the court will not measure the degree of fault of the suffering boat. If there was any fault on the part of the plaintiff, and that fault contributed in any degree to the act which produced the injury, there can be no recovery. This is the well-established doctrine of the English courts, the Supreme Court of the United

States, and the courts of the different States.—Butterfield v. Forrester, 11 East 60 ; Pluckwell v. Wilson, 5 Car. & P. 368; Woolf v. Beard, 34 E. C. L. Rep. 435 ; Barnes v. Cole, 21 Wend. 188; Hartfield v. Roper, *ib.* 615; Rathbun & West v. Payne, 19 *ib.* 399; Spencer v. Utica & Schenectady Railroad Co., 5 Barb. 337; Brand v. Troy & Schenectady Railroad Co., 8 *ib.* 369, 383; Drew v. Steamboat Chesapeake, 2 Doug. (Mich.) R. 33; Brown v. Maxwell, 6 Hill (N. Y.) 592 ; Aurora Railroad Co. v. Grimes, 13 Ill. 585 ; Lane v. Crombie, 12 Pick. 177; 4 McLean's R. 291 ; 12 Shep. 39 ; 10 U. S. Dig. 394 ; Angell on Carriers, §§ 556, 633, 635, 643, 645. If the owners of the boat cannot recover on account of the fault on their part, neither can the shippers ; for, clearly, the obligation of the steamboat or its owners to shippers on the flat-boat cannot be greater in degree than to the owners of the flat-boat. The liability must be the same : the owners or managers of the flat were agents of the shippers in this matter. The shippers have another remedy, viz., an action against the owners of the flat-boat as common carriers ; and that remedy is very ample. The carrier is an insurer against everything but the act of God and the public enemy.—Angell on Carriers, § 148. The liability of the owners of the flat-boat to the shippers of the cotton, under the evidence set out in the record, cannot be doubted.

5. The court erred, also, in sustaining the demurrer to the plea of a former recovery by the common carriers of the cotton. The recovery was alleged to have been before a court of competent jurisdiction, for the injuries alleged and complained of in this case. Whether the recovery was by the plaintiff in this case, or by another party competent to sue, can make no difference in principle : one recovery for the same matter is all that the law permits. The owners of the flat-boat were competent to sue for and recover all injury done the cargo.— Story on Bailments, p. 144, § 148 ; Parsons on Cont., p. 633. As to former recovery or adjudication, see Pinny v. Barnes, 17 Conn. 420 ; George v. Gillespie, 1 Iowa R. 421; 9 Humph. 342; Thompson v. Winfield, 1 Miss. 243 ; Pender v. Felts, 2 S. & M. 535; Cummings v. McGehee, 8 Port. 349; O'Neal v. Brown, 21 Ala. 482 ; 3 C. & H.'s Notes to Phil. Ev. 830 ; 1 Greenl. Ev. §§ 522, 528.

6. The captain and part owner of the flat-boat was not a competent witness for the plaintiff, and the court therefore erred in overruling the motion to exclude him. A recovery by the plaintiff in this case will be a protection to the owners of the flat-boat, and the record in this case would be evidence for them in any suit afterwards brought against them by the plaintiff; he is, therefore, directly interested, and of course incompetent.—Otis & Jayne v. Thom, 23 Ala. 469.

7. As to the charges requested : The first asserts the principle embraced in the second and third pleas, as to which see authorities cited *supra*. The refusal of the second charge was equivalent to charging the converse of it, viz., that extraordinary diligence was required on the part of the steamboat, under the circumstances; and this, too, when the managers of the flat-boats were highly culpable. This is not the law : the owners of the steamboat discharged their duty, in providing a sufficient number of competent officers and men; and if the officers and men used that care and diligence which competent officers and men, engaged in the same business, are accustomed to exercise under similar circumstances, this will excuse the owners, and is all the law requires. Of course, their responsibility is greater in their character of carriers. The legal presumption is, that the master of a vessel will do what is right, and will follow the regular and correct course of trade.—Angell on Carriers, § 643. The third charge asserted, in effect, that if the collision was brought about directly or indirectly by the unskilfulness and mismanagement of those who had charge of the flats, the owners of the steamboat were not responsible; and this analysis, it is believed, demonstrates its correctness. The fourth charge asserts, in substance, that if those who had charge of the flat-boats acted in a manner which necessarily increased the risk and danger of a collision with steamboats, and the officers and crew of the steamboat exercised ordinary care and diligence to avoid a collision, her owners would not be responsible. Ordinary care—that is, such care as the generality of persons engaged in the same business are accustomed to exercise—is all the law requires in ordinary cases; and *a fortiori*, it ought to be held sufficient against a party who is guilty of gross negligence. The fifth charge contains a proposition relating to

the pleadings; and the sixth asserts a principle similar to that contained in the first and second, somewhat modified and varied in the statement. As to all these charges reference is made to the authorities above cited. Charges will be construed in reference to the proof.—Perry v. Hardman, 12 Ala. 604; Lockwood v. Nelson, 16 ib. 294. The steamboat, so far as the proof discloses, was not at all in fault; no want of care or diligence on her part is shown, but rather the contrary; while the flat-boats are shown to have been in fault in several particulars. Want of care and diligence will not be presumed, but must be proved.—Parsons on Contracts, p. 606; 7 Humph. 134.

WM. M. MURPHY, contra:

The case at bar is distinguishable from that of Otis v. Thorn, 18 Ala. 395, which is relied on to sustain the first three assignments of error. That case decides, that, "after the issuance of an attachment against the steamboat, the proceedings should so far conform to the nature of the admiralty practice, as that the declaration be filed against the boat itself, and not against the owners, and the owners be allowed to intervene and make themselves parties, if they desire to do so." In that case, there was no proof of ownership; in the case at bar, the ownership is admitted: the owners did intervene, made themselves parties, and defended the suit. The declaration is against the boat; the parties are brought into court by the proceeding against the boat; and the proceedings are assimilated as nearly as may be to the admiralty practice. The fourth section of the act provides, that "the declaration and subsequent proceedings shall conform to an action on the case for the injury." It is believed to be impossible to obey this act and yet conform entirely to the admiralty practice: there is no such proceeding known to admiralty as an action on the case, and none known to the common law as an action on the case, a proceeding in rem. The attachment is in rem; but when it is executed, and bond given, the declaration and subsequent proceedings must be in personam. The "subsequent proceedings" are, the plea, verdict, and judgment. Every word in this declaration in personam may be stricken out, and yet a good declaration against the steamboat will remain.

The second and third pleas are bad. They are irrelevant, and the evidence to sustain them would be irrelevant. The only issue was, whether the collision took place through the fault of the steamboat; if it did, the owners are responsible. Otis & Jayne v. Thom, 23 Ala. 469. These pleas may be true, and yet the steamboat may be in fault; and pleas admitting of two constructions must be construed most strongly against the pleader.—Lacy v. Holbrook, 4 Ala. 88. These pleas are also bad for uncertainty.—1 Chitty's Pl. 539.

The fourth plea, which sets up a former recovery by the owners of the flat-boat, is also bad, because the recovery is not between the same parties, nor their privies. There is certainly no privity between the plaintiffs in that suit and the plaintiff in this: both have separate and independent rights of action for their respective injuries.—Davidson & Stringfellow v. Shipman, 6 Ala. 30; 1 Stark. Ev. 191; Duchess of Kingston's case, 20 State Trials.

McCullough was admitted to testify under section 2302 of the Code. The case of Otis & Jayne v. Thom, *supra*, decides the law of evidence before the adoption of the Code, and is founded upon section 396 of 1st Greenleaf's Evidence, which expressly asserts, that the record would be no evidence against the servant or agent who was called as a witness. The trial in this case was had since the adoption of the Code, and the witness does not come under the exceptions enumerated in section 2302.

GOLDTHWAITE, J.—The first question is upon the action of the court in refusing to set aside the declaration. The attachment was issued under the act of 17th January, 1844, (Acts 1843-4, 98,) and directs the sheriff to seize and take possession of the steamboat Farmer, with her tackle, apparel, and furniture, and to keep and retain the same in his possession, to answer to the judgment which may be rendered, unless the master, owner, or some other person for them, enter into bond, &c. The first count of the declaration "complains of Edward W. Shields, Jacob B. Walker, and Daniel Walker, claimants and owners of the steamboat called the Farmer"; and alleges that they had the care, direction and management of the same, and that by the carelessness and misdirection of

"said defendants in the management of said steamboat, she ran into the flat," &c. The second count differs from the first, only in alleging that "the said Shields, as commander and captain, had the care and management of the steamboat, and that the flat was run into by his carelessness and misdirection." We have referred particularly to the declaration, in order to show that it is against the parties named therein, as defendants, and not the boat itself; and this being the case, it falls directly within the decision of this court in Otis v. Thorn, 18 Ala. 395, where the attachment was issued against a steamboat under the same statute, and the declaration was against two of the obligors in the replevy bond as owners. The defendants moved the court to set aside the declaration, which was refused, and the correctness of the action of the court in this respect was the question on error. It was held, that the declaration must be against the boat itself, and not the owners; and that the refusal of the court to set aside the declaration, was a reversible error. It is supposed, however, by the counsel for the appellees, that the fact that the defendants are admitted by the affidavit, on which the attachment issued, to be the owners of the steamboat, and by the attachment bond, which is payable to them as such, takes the case at bar out of the influence of the decision to which we have referred. But we do not think so. The ground on which it rests is, that the act of 1844 gave the remedy against the boat alone, and, although persons interested as owners would have the right to intervene and defend, the declaration must be, in conformity with the process and object of the statute, against the boat, and not its owners. There is no difficulty in framing a declaration to meet this decision. It should complain of the boat itself, and allege the injury to have been done by it, through the carelessness and negligence of those having its direction and management. It would be unnecessary, in view of the purpose of the statute, and the judicial construction it has received, to state the names of the persons whose carelessness caused the vessel to commit the injury, although the naming of them would not be objectionable. Any of the owners would have the right to come in and defend the suit; and, by analogy to the practice in admiralty, this should be done by application to the court, stating that the applicant is

interested in the steamboat seized, as owner, and should be sworn to by him if within the State, and not at an inconvenient distance,—otherwise, by his agent (The Adeline, 9 Cranch 244 ; Dunlap's Ad. Pr. 161-2); and an entry should be made upon the minutes of the court, admitting him to defend as owner.

As the proceedings, except so far as they are varied by the statute, must be governed by the rules of the common law, any facts which would defeat the action, had it been brought in case against the owners, will have the same effect when pleaded to this proceeding against the boat. The general rule of the common law unquestionably is, that if both vessels are to blame, neither can recover.—Vanderplank v. Miller, 1 M. & M. 169 ; Verrall v. Garner, 1 Cromp. & Mees. 21 ; Lack v. Seward, 4 C. & P. 106; Luxford v. Large, 5 *ib.* 421; Woolf v. Beard, 8 *ib.* 373; Kent v. Elstob, 3 East 18 ; Kennard v. Burton, 25 Maine 39; Broadwell v. Swigert, 7 B. Mon. 39; Rathbun v. Payne, 19 Wen. 399. But this rule must be understood with reference to faults which operated *directly and immediately* to produce the collision.—Cummins v. Spruance, 4 Harr. 315. Because a flat-boat runs at night, when she should not, or ties up in the wrong place, would not justify a steamboat in running into her, any more than a stage coach would be justified in wilfully or carelessly running over a man lying asleep in the road ; and in all such cases, if the act causing the injury could have been prevented by the use of ordinary care, the failure to use it will render the party liable. There is no inflexible rule, either of the river or the road, the neglect of which by the one party will dispense with the exercise of common caution by the other.—Abbott on Shipping 238, and cases cited. But "ordinary care" is altogether a relative term ; and in cases like those we have put, the want of it means nothing more than the failure to use those precautions which a just regard to the persons and property of others demands should be used under the circumstances of the particular case. Of course, a vessel not in fault would not be obliged, in order to escape a collision, to risk her own safety, or endanger the lives of her passengers ; but she should at least use the best skill and judgment of her officers, and the employment of the means at their command, in order to

prevent the occurrence of any act fraught with peril to the lives and property of others.

Applying the principles we have laid down to the matter of the second and third pleas, it will be seen that they were both defective, for the reason, that the collision might have been remotely and partly caused by the imprudence and neg-ligence of the flat running at night in a certain part of the river where it was unusual and dangerous for such boats to run, or by mismanagement in being fastened broadside to another flat; but we have already seen that neither of these circumstances would have excused the steamboat, if notwith-standing, she could, by the exercise of ordinary care on her part, have passed them without striking.

In relation to the fourth plea, there is no doubt that a com-mon carrier, as he is not absolved from his liability to the owner of the goods by the torts of third persons, has the right to maintain an action against them for the wrong; and it is equally certain that a recovery and satisfaction by him, for the injury done to the goods, will be a bar to an action by the owner for the damage or loss from the same injury.— Story on Bail., § 585; ib. § 94. The plea here is artfully drawn, and seeks to escape the action, by setting out a recov-ery by the carrier, for the injury committed by the running or striking of the steamboat against the flat, which, it avers, " are the same injuries which the plaintiff's declaration alleges to have been done to the said cotton of the said plaintiff." But this is not equivalent to an averment that the recovery was for the effect of such injury upon the same cotton des-cribed in the declaration. Non constat, but that the former suit was for the damage done by the collision to the cotton of some other person on board the same flat. The demurrer was properly sustained to this plea also.

In admitting the evidence of the owner and person in charge of the flat, the court erred, for the reason, that a recovery in the action would have placed the witness in a state of security against any action the plaintiff might bring against him.— Otis v. Thom, 23 Ala. 469. It is urged, however, that he is made a competent witness by section 2302 of the Code. But if the law of the Code applied, which we do not decide, he would not be competent, as the verdict and judgment in the

suit in which he was offered, if in favor of the plaintiff, might be evidence in his favor in another suit against him by the same party (Farwell v. Hilliard, 3 N. H. 318; Gilmore v. Carr, 2 Mass. 171; Wetmer v. Slatter, 2 Rawle, per Huston, J.); and the section referred to expressly provides that the objection to the competency of a witness shall prevail in such a case.

The charges are easily disposed of. The testimony on which they were founded did not tend to show that the conduct of the flat was such as to contribute directly and immediately to the act of collision; and the sole question, therefore, under the law, was whether the steamboat used ordinary care to prevent it. The first, third, and sixth charges asserted, in effect, that the fault of one vessel, although not directly contributing to the collision, dispensed with the want of ordinary care in the other to prevent it, and were therefore properly refused. The second and fourth should have been given, as they made the liability turn on the question of ordinary care on the part of the steamboat; and in relation to the fifth, as the correctness of its refusal is not questioned, it is unnecessary to say anything.

Judgment reversed, and cause remanded.