# BARBOUR COUNTY *vs.* BRUNSON.

[ACTION AGAINST COUNTY FOR NEGLIGENCE.]

1. *Statutory liability of county for damages caused by fall of public bridge.*—Under the provisions of the Code, (§ 1203,) an action lies against a county, to recover damages sustained from the fall of a bridge after the expiration of the period covered by the builder's guaranty, although no toll was charged at the bridge.

APPEAL from the Circuit Court of Barbour.

The record does not show who was the presiding judge.

THE complaint in this case was as follows:

"Marion A. Brunson⎫  The plaintiff claims of the de-
        vs.        ⎬ fendant the sum of $2,000, as
Barbour County.   ⎭ damages for injuries sustained by
him in the loss of his property occasioned by the falling
in of a bridge, which had been constructed by contract
with the court of county commissioners of said county,
over a stream known as 'Hodge's mill creek,' on the pub-
lic highway in said county from Eufaula to Midway; said
court of county commissioners having taken a guaranty·
by bond from the builders of said bridge that it should
continue safe for the passage of travelers and other per-
sons for the period of —— years, which said period had
elapsed; and although it had elapsed, said bridge was
allowed to stand, in a neglected and unsafe condition,
until the —— day of August, 1859, when, as plaintiff's
wagon and team were passing over it, said bridge fell in,
and killed a negro man and a mule, the property of plain-
tiff, and injured his wagon and harness, damaging him in
the sum of $2,000; for which damages plaintiff applied,
in the terms of the statute, to the court of county com-
missioners for payment; but being by said court refused,
he brings this action, and demands of said county his
damages aforesaid, together with interest thereon.

"Also, the like sum of $2,000, for damages sustained
in the loss of property destroyed and injured by the fall-
ing of a public bridge, kept up by said county over a
stream on a public highway in said county, to-wit, in
August, 1859; the said county being bound to keep said
bridge in a safe condition for the passage of the public,
and by its failure to do so is responsible to plaintiff for
the damages which he has sustained by reason of said
neglect.

"Also, the like sum of $2,000, as damages which he has
sustained by reason of the negligence of the court of
county commissioners of said county, for that heretofore,
to-wit," &c., "the said court of county commissioners,
by virtue of the jurisdiction given to it, did contract with
certain parties, and authorize them to build a bridge
across Hodge's mill creek in said county, on the public
highway leading from Eufaula to Midway, requiring said

contractors to give bond to guaranty the safety of said bridge for the period of —— years; and the said period having elapsed, it became the duty of the said court to keep the said bridge in a safe condition for the passage of the public; but, not regarding their duty, the said court neglected to keep said bridge in good repair, but permitted it to become unsafe and dangerous, so that plaintiff, on the —— day of August, 1859, passing over and upon said bridge, as he had a right to do, and said bridge (a part of said highway) having become rotten and unsafe by reason of said neglect, while plaintiff's wagon and team were passing over it, fell through, and was broken down; whereby a negro man and a mule, the property of plaintiff, were killed, and the wagon and harness were broken, damaging the plaintiff to the amount of $2,000, as aforesaid; which said damages the said court of county commissioners, though requested so to do, have hitherto refused to pay; wherefore plaintiff sues," &c.

The case was submitted to the decision of the court below on the following agreed statement of facts: "It is admitted, that the facts set forth in the plaintiff's complaint, not inconsistent with anything herein stated, are true; that the negro and mule killed were worth $1,700, and the wagon and harness damaged to the extent of $10; and that if the plaintiff is entitled to recover at all, he shall recover $1,710. It is admitted, also, that the bridge was built within the body of the county, and not on a county line, by order of the court of county commissioners, by contract; that the bond given by the contractors had expired; that the bridge was free, the defendant having never charged or intended to charge any toll, and the plaintiff having never paid or offered to pay any toll; that the plaintiff's demand was regularly presented to the court of county commissioners, within twelve months after the damage was sustained, and that payment of the same was refused by said court. Each party reserves the right of appeal to the supreme court."

On these facts, the court rendered judgment for the plaintiff; and its judgment is now assigned as error.

JEFF. BUFORD, for appellant.
WM. H. CHAMBERS, *contra.*

A. J. WALKER, C. J.—Section 1203 of the Code is in the following words : " When a bridge or causeway has been erected by contract with the county commissioners, with a guaranty, by bond or otherwise, that it shall continue safe for the passage of travelers and other persons for a stipulated time, any person injured in person or property, before the expiration of such period, by a defect in such bridge or causeway, may sue in their own name on the bond or other guaranty, and recover damages for · the injury; and if no guaranty is taken, or the period has expired, may sue and recover damages of the county."

It is perfectly clear, that this section, in its literal import, gives a remedy for the complainant's injury against the county. But it is contended, that the bridges and causeways referred to must be understood to be toll bridges and causeways. In support of this position reference is made to the fact, that section 1203 is a part of an article, the caption of which indicates that " toll bridges, causeways, and ferries," are the only subjects within its purview. It is a satisfactory reply to this argument, that section 1190, in the same article, is not susceptible of any application to toll bridges, causeways or ferries, and that the article is, therefore, clearly not restricted to the subjects mentioned in the caption.

But we think a comparison of section 1203 with other provisions of the Code, shows that its reference is not to toll bridges and causeways. Section 1203 very clearly relates to bridges and causeways built by contract. The 5th division of section 1159, and the latter clause of section 1189, show it to have been contemplated that the court of county commissioners should have bridges built by contract with the county funds. To the bridges and causeways thus built section 1203 has a very obvious application. Section 1189, which is in the same article with section 1203, authorizes the court of county commissioners to establish toll bridges, causeways and ferries, in the manner afterwards provided. Section 1191

prescribes the manner in which the toll bridges, cause-
ways, and ferries are to be established. The manner
prescribed is, to license persons to establish ferries, cause-
ways and bridges, to fix the rates of toll, and to require
bond, with surety, of specified condition. Bridges and
causeways, established by this section, are the toll bridges
and causeways which the county commissioners are
authorized to establish. They are clearly not the bridges
and causeways referred to in section 1203, because they
are not erected by contract with the county commission-
ers, as are those mentioned in 1203, and because they can
not be erected under any other guaranty than that of the
prescribed bond; while those mentioned in section 1203
may be erected under a guaranty by bond or otherwise.
But there is still another consideration, which tends very
strongly to show that the toll bridges and causeways
mentioned in section 1191 are not the bridges and cause-
ways mentioned in section 1203. Section 1197 prescribes
the remedy on the bond given under section 1191; and if
section 1203 refers to the same bridges and causeways, a
remedy upon the same bond is prescribed the second
time, and the legislature is convicted of inserting a vain
and useless provision in a code which was designed to be
consistent and concise.

After a careful examination and study of all the statutes
bearing upon the subject, we can find no reason for giv-
ing to section 1203 a construction variant from the natural
import of its language; and we are constrained to hold,
that the Code has, in that section, prescribed the remedy
adopted in this case for an injury sustained under the
circumstances set forth in the statement of facts agreed
upon.

We do not controvert the argument of appellant's
counsel, that the authority which the court of county
commissioners exercise over the subject of roads and
bridges is governmental in its character, and that the
county would not, upon common-law principles, be liable
for any injury which might result from the failure to
exercise that authority in a manner the most conducive
to the safety of the public. But the legislature has

unquestionably the power to impose such liability; and we think they have done so, to the extent necessary to sustain the ruling of the court below.—Smoot v. Wetumpka, 24 Ala. 112; Gilmer v. City Council of Montgomery, 32 *ib.* 116; Dargan v. Mayor, &c., 31 *ib.* 469.

As it was unnecessary, we have not considered the question, whether the ruling of the court below can be revised upon the record before us, there being no bill of exceptions.

Judgment affirmed.