## GREGORY *vs.* WALKER.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Proof of delivery of deed.*—The testimony of the subscribing witness to a deed, to the effect that, immediately after its execution, the grantor handed it to the mother of the grantees, who were infants living with their mother, "and told her to keep it," is, at least, sufficient to let the deed go to the jury; the intention of the grantor, that it should or should not be considered as delivered, being a question for the determination of the jury, under proper instructions from the court.

2. *Whether instrument is deed or will.*—An instrument of writing, in form a deed, which purports to be made in consideration of the 'regard' entertained by the grantor for the grantees, and for the further consideration of one dollar in hand paid, and which conveys to the grantees, by the words of conveyance usually employed in deeds,

certain real and personal property, 'together with the right to control the same at the death' of the grantor,—is a deed, and not a will.·

3. *Evidence of fraud in execution, or illegality of consideration of deed.* Plaintiffs claiming title to the land in controversy under a deed of gift from defendant's deceased father, which defendant sought to impeach on the grounds of non-delivery, fraud in the execution, and illegality of consideration; a written agreement between said grantor and plaintiffs' mother, an unmarried woman, which was executed several months before the deed, did not refer to the property conveyed by the deed, was not referred to in the deed, and simply stipulated for the performance by plaintiffs' mother of domestic services for said grantor during his life, in consideration of which he promised to give her certain personal property at his death, and to provide board until that time for her and her said children,—is, *prima facie*, irrelevant; nor is it admissible in connection with parol evidence, which is offered "for the purpose of showing that said deed was fraudulently obtained," but which does not tend to show fraud in its execution.

4. *Redundant evidence.*—The exclusion of evidence which is offered to prove a fact that has been already proved, and is not denied or controverted by the opposite party, is, at most, error without injury.

5. *Declarations of grantor; when admissible against grantee.*—The declarations of the grantor, tending to impeach the validity of his deed, are not admissible evidence against the grantee, unless shown to have been made before the execution of the deed.

6. *To what witness may testify.*—A witness can not testify that a person "was deranged, or insane"; nor that "her insanity became worse because of the conduct" of her husband and another woman; nor that a man and a woman "lived in adultery" with each other: such statements are mere conclusions, or deductions from facts, and not the facts themselves.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. WM. S. MUDD.

THIS action was brought by John Walker and Minerva J. Walker, (infants, suing by their next friend, Mary Walker,) against Terrell Gregory, to recover the possession of a certain tract of land, containing one hundred and sixty acres, together with damages for its detention; and was commenced on the 16th August, 1853. The defendant pleaded the general issue, "in short by consent, with leave to give in evidence anything that might be specially pleaded in bar; and the plaintiffs replied in like manner, and with like leave." The land in controversy belonged to Jeremiah Gregory, deceased, in his life-time; and the plaintiffs derived title to it under an instrument, of which the following is a copy:

"State of Alabama, ⎱ Know all men by these
St. Clair County. ⎰ presents, that I, Jeremiah
Gregory, of said State and county, for and in considera-
tion of the regard that I entertain for *Minerva J. Walker
and John Walker*, and for and in consideration of the sum
of one dollar, in specie, to me in hand paid before the seal-
ing and delivery of these presents, the receipt whereof is
hereby acknowledged, have given and granted, and by
these presents do give and grant, unto the said *Minerva J.
Walker and John Walker*, the following described negro
property and real estate," &c., describing the land in con-
troversy, together with seven slaves, "*a good horse, bridle
and saddle, apiece, one cow and calf, two beds and furni-
ture, one gin and thresher, all my sheep, and twenty head of
hogs;* to have and hold the said bargained, given, and con-
veyed property, together with the *right to control the same
at my deth,* against the lawful claim or claims of any per-
son or persons whatsoever. In testimony whereof, I have
hereunto set my hand, and affixed my seal, the *tenth* day of
August, in the year of our Lord one thousand eight hun-
dred and *forty-nine.*

his
"Attest: Jackson Lawson.    "JEREMIAH ⋈ GREGORY.
mark.

The defendant was the son and sole heir-at-law of said
Jeremiah Gregory, deceased; and he sought to impeach
the validity of this instrument on the following grounds:
1st, that it was never delivered; 2d, that it was testa-
mentary in its character, and had never been admitted to
probate; 3d, that it was procured by fraud; and, 4th,
that it was given in consideration of future illicit cohabi-
tation between said Jeremiah Gregory and Mary (or Polly)
Walker, plaintiffs' mother. To prove the execution and
delivery of said deed, the plaintiffs introduced as a witness
Jackson Lawson, the attesting witness, who testified as
follows: "On the 10th August, 1849, witness lived about
two miles from Jeremiah Gregory, and was keeping a lit-
tle school in a house about twenty or thirty yards from,

the house in which he (witness) lived. Between eleven and twelve o'clock on the morning of that day, said Gregory rode up to his house. Polly Walker, with the plaintiffs, her children, had come to his house the evening before, and staid all night, and were there when old man Gregory came. When witness saw him ride up, he had not the slightest idea of his object in coming ; but he dismissed his school, and went over to the house, and he and the old man took a seat on the piazza. After a few minutes' chat, in which the old man said nothing about his intention to execute this deed, or his object in coming there, he rose up, and told witness he wanted him to do a little business for him privately, and proposed to walk over to the school-house. Witness assented, and they started to go ; the old man called to Polly Walker, who was in the house, to 'come on', and they went over to the school-room. When they were inside, the old man pulled a paper out of his pocket, and requested witness to fill it up as he directed ; and witness accordingly inserted in their proper places, as they appear in said deed, the plaintiffs' names, the property conveyed, and the other words which are " italicised in the above copy of the deed ; "and wrote the old man's name, at his request, at the bottom, and signed his own name as an attesting witness thereto. Before the old man made his mark to it, he not being able to read writing, witness read the paper over to him correctly ; and when he came to the description of the land, the old man told him he had made a mistake in the numbers ; and witness then proceeded to correct the error, as shown in the deed. These alterations and interlineations were made by the old man's directions, before he made his mark to it. After the deed was corrected and signed, the old man handed it to Polly Walker, and told her to keep it; and at the same time he handed her another paper, signed by him and Polly Walker in April, 1849, and attested by witness and Mr. Barker, and said to her, 'Some one must keep that.' This was all that was said by the old man when he delivered said deed. They

then returned towards the house, and the old man went off home,—would not even stay to dinner; and after dinner Polly Walker, with the plaintiffs, also started towards home, their home being at said Gregory's house." On this evidence, the plaintiffs proposed to read the deed to the jury. The defendant objected to its admission, " on the ground that it had not been proved to have been delivered, and also because it was a testamentary paper, and not a deed." The court overruled the objections, and allowed the deed to be read to the jury; and the defendant excepted.

The witness Lawson testified, on cross-examination, that he was the son-in-law of Polly Walker, having married one of her daughters; that said Polly Walker, at the time of the delivery of said deed, had four children living, though she had never been married;. that two of these children were born before she went to Gregory's house to live; that Gregory was between sixty-five and seventy years of age at the time of the execution of said deed, but was very strong and vigorous in mind and body, and his wife (defendant's mother) was then between sixty and seventy years old; that the younger of the plaintiffs was at that time between ten and twelve, and the older between twelve and fourteen years old. " It was further proved by defendant, on cross-examination of said Lawson, and without objection on the part of the plaintiffs, that Polly Walker, with her father, went to live on said Gregory's plantation before plaintiffs were born, and continued to live there until February, 1849, when she went to live in his house, and carried the plaintiffs with her, and continued to live in his house, and in his employment, from that time until his death in 1853; none of which was denied or controverted by plaintiffs." In reference to the written agreement between said Gregory and Polly Walker, above referred to as being attested by Lawson and one Barker, Lawson testified, on cross-examination, that he wrote the name *Rachel* where it occurs in said agreement, at the request of Gregory, some time between the 24th April and the 10th August, 1849, and signed his name thereto as an

attesting witness; and Barker, the other subscribing witness, testified, that the name *Rachel* was not in the agreement when it was executed by the parties, in his presence, on the day of its date. The agreement referred to, which the parties executed by making their respective marks across their names as written by the attesting witnesses, was in the following words:

"Agreement made and entered into the 24th day of April, A. D. 1849, between Jeremiah Gregory and Mary Walker, both of the county of St. Clair and State of Alabama, witnesseth, that said Gregory agrees with said Mary Walker to give her at his decease one negro slave *at his decease*, together with the future increase from this date *date*, and twenty head of hogs, one horse, saddle and bridle, for and in consideration of her services during his life, in attending to the business of his house, working in the house, and attending and keeping in repair the clothing of the family, furniture, and beds; also, to find board for her and her two children during the same period; and on failing to comply with said stipulation, this agreement to be null and void. And the said Mary Walker hereby agrees to attend to the household business of said Gregory during his *live*, (should she live so long,) and use due care, industry and diligence in keeping the household furniture and apparel in order and repair, and to accept for her services, at the decease of said Gregory, said female slave Rachel and her increase, and board and sustenance for herself and her two children, and twenty head of hogs, and one horse, saddle and bridle. In testimony whereof," &c.

The defendant offered to read this agreement to the jury, on proof of its execution; but the plaintiffs objected to its admission, on the ground that it was irrelevant, and the court sustained their objection; to which the defendant excepted." "The defendant then offered said agreement in evidence, in connection with the other evidence hereinbefore set out, as tending to show that the pretended deed to the plaintiffs was fraudulently obtained by said Polly Walker and Lawson, and as tending to show that, on said

10th day of August, 1849, said Polly Walker was in the hired employ of said Gregory ; and insisted, that, if such was the fact, it was evidence to which the jury might look, in determining whether plaintiffs' said deed was ever delivered,—there being no other evidence of a delivery than the testimony of said Lawson, hereinbefore set out." The court refused, on plaintiffs' motion, to allow said deed to be read for either of the purposes specified ; and the defendant excepted.

The deposition of Dr. Wm. H. Benson was taken, on interrogatories and cross-interrogatories, in another suit between Mary Walker and the defendant, under an agreement that it might also be used, so far as it was legal evidence, in this suit ; and the defendant offered in evidence the answers of said witness to the cross-interrogatories. On motion of the plaintiffs, the court excluded from the jury the following portion of the answer of said witness to the second cross-interrogatory : "The wife of Jeremiah Gregory was living with him when Mary Walker went to live with him. She was deranged, or insane. Her insanity was worse after Mary Walker went there to live. It was because of the conduct of her husband and Mary Walker. *Said Mary Walker lived in adultery with Jeremiah Gregory. Witness knew of said Gregory's having illicit intercourse with Mary Walker frequently during her stay there ; knew said Gregory to sleep with her often ; has frequently seen them engaged in the very act of illicit intercourse. Said Gregory kept up illicit intercourse with Mary Walker, from the time witness first knew her, until said Gregory's death.*" The defendant reserved an exception to the suppression of this part of the witness' answer, and then offered separately the italicized portion of the answer, "as evidence tending to show that the real purpose and consideration of the pretended deed from Jeremiah Gregory to plaintiffs was future illicit intercourse between said Gregory and Mary Walker." The court refused to allow it to be read for that purpose, and the defendant excepted. The court also excluded from the jury the following portion of the

answer of this witness to the third cross-interrogatory : "Said Gregory told witness, that he had brought Mary Walker to his house, and had pretended to hire her, for a blind to keep down the suspicions of his neighbors, to avoid the law against living in adultery "; to which the defendant also reserved an exception.

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

HEFLIN, MARTIN & FORNEY, for appellant.

GOLDTHWAITE, RICE & SEMPLE, ALEX. & JNO. WHITE, and B. T. POPE, contra.

R. W. WALKER, J.—1. There was no error in allowing the deed from Gregory to the plaintiffs to be read in evidence. The evidence in relation to its execution and delivery was, at least, sufficient to let the instrument go to the jury. Whether there was in fact a valid delivery, depended on the intention of the grantor that the deed should or should not be considered as executed ; and of that intention the jury were to judge, under the charge of the court.—McLure v. Colclough, 17 Ala. 96; Morris v. Varner, 32 Ala. 499.

[2.] There is nothing in the second objection made to the introduction of the deed in evidence. It is clearly a deed, not a will.

[3.] The written agreement between Gregory and Mary Walker does not appear, upon its face, to have any connection with the subject-matter of this suit, nor with the deed from Gregory to the plaintiffs. It was made between different parties, for a different purpose, upon a different consideration, and at a different time. Considered by itself, therefore, it was obviously irrelevant. Nor was it admissible, when offered in connection with the other evidence referred to in the bill of exceptions, for the purpose of showing that the deed to the plaintiffs was fraudulently obtained. We are unable to perceive that this agreement, either by itself, or in connection with the other evidence

3

alluded to, could have tended in the least to prove fraud in
the *execution* of the deed under which the plaintiffs claimed
title.    And it was well settled that, at law, and as between
parties occupying the relation that the present parties sus-
tain to each other, no kind of fraud can be shown, except
fraud in the execution of the deed,—such as, that it was
falsely read to the grantor, or the like.—*Thompson v. Drake*,
32 Ala. 99; *Morris v. Harvey*, 4 Ala. 300.

[4.] It had already been proved, (and the fact was not
denied or controverted by the plaintiffs,) that Polly Walker
was living at Gregory's house, and in his employment, on
the 10th of August, 1849.    This being so, the exclusion of
the agreement between Gregory and Mrs. Walker, when
offered for the purpose of proving the same fact, was not
a reversible error.    The exclusion of unnecessary or redun-
dant evidence, is error without injury.

[5.] The declarations of Gregory, the grantor, were
properly excluded; for the reason, that they were not
shown to have been made before the execution of the deed
to the plaintiffs.    A gift cannot be affected by declarations
of the donor, made after the gift was consummated.—*Olds
v. Powell*, 7 Ala. 652; *Mobley v. Barnes*, 26 Ala. 718.

[6.] Some portions of each of the other answers of Ben-
son, which were excluded by the court, were clearly irrel-
evant, or illegal.    For example, the statements, that the
old lady (Mrs. Gregory) "was deranged"; "that her in-
sanity became worse because of the conduct of her hus-
band and Mary Walker"; "that Polly Walker lived in adul-
tery with old man Gregory,"—were mere conclusions of the
witness—deductions from facts, not the facts themselves.
*Walker v. Walker*, 34 Ala. 473; *Donnell v. Jones*, 13 Ala.
510; *Benje v. Creagh*, 21 Ala. 156.    There was, therefore,
no error in excluding these answers; for, when evidence is
offered, of which a portion is illegal, the court may reject
all, and is not bound to separate the legal from the illegal.
Judgment affirmed.

A. J. WALKER, C. J., having been of counsel, not sitting.