## EDGAR *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Declarations by slain party ; when permitted to go to jury.*—As a general rule, on an indictment for murder, a declaration made by the slain party, which has never come to the knowledge of the accused, should not be permitted to go to the jury, at the instance of the accused.
2. *Written charges ; must be given, or refused, as asked.*—Under § 2756, Revised Code, a charge moved for by either party in writing, must be given or refused in the terms in which they are written.   In such cases, the court can not add any qualifications ; and if qualifications are so added, the judgment will be reversed for such error.   The law is plain, direct, and peremptory, and must be obeyed.

APPEAL from the City Court of Mobile.
Tried before the Hon. C. F. MOULTON.

JAMES EDGAR was indicted at the June term, 1868, of the city court of Mobile, for the murder of Henry D. Bassett. The trial came on the 4th December, and the defendant was found guilty of murder in the second degree, and sentenced to the penitentiary for twenty-five years.

On the trial the defendant reserved the following bill of exceptions : " While the jury was being impanneled one Titcomb was called, and asked if he was a free-holder or house-holder. He answered that he did not own any real estate, but that he had a family and rented a house in Mobile, and had resided with his family in the house so rented for more than twelve months previous to that time. The State accepted the juror, and the defendant objected to him on the ground that he was not qualified as a juror, but the court overruled his objection, and called upon the defendant to accept him, or challenge him peremptorily, and the defendant challenged him peremptorily, to all of which ruling the defendant excepted. All this occurred as to John Gray, and James Riley, and defendant excepted, in each and all instances."

" On the trial it appeared that the killing took place at the saw-mill owned by Baird & Bassett, on Fowl river, in Mobile county, on the 22d day of February, 1868, and in the dusk of the evening, after the hands had quit work, and that the mill was about one hundred and fifty yards from Bassett's house. It also appeared, that the defendant, with one Summerlin, had been at the mill about four o'clock in the evening of the same day, and that they, in company with James Phillips, sometimes called "Duck," who was the watchman at the mill, had crossed the river soon after, and returned a short time before the killing ; Phillips going to the mill, and Edgar stopping to talk with Taylor, a witness, in the lane near Bassett's house. The witness Taylor, on the trial, swore that after a few moments conversation with Edgar, he went with him to the mill, when Edgar raised a row with the watchman about a report, or statement, that the watchman had circulated about him and his wife ; drew

his pistol and flourished it about, and threatened to shoot Phillips; felt his body to see if he was armed, and told him if he (watchman) had a pistol, he would blow his brains out; that when Edgar was cursing the watchman in loud tones; Mr. Baird came up and asked what this fuss was about, when Edgar drew his pistol on him two or three times. Baird went close up to him, and got hold of him, when they made it up and shook hands. Edgar and Baird and witness then started to walk out from under the mill-shed, and were talking, when Bassett came up and inquired what this noise was about, when some one said it was Edgar and the watchman. Bassett said that this was "no time or place for such a row; that he, Edgar, had better come at some other time, and in the day; that this man is the watchman at the mill in our employ, and we must protect him." Just then Summerlin came up, and Edgar said, " I hate to be driven away in this way, as though I was a dog; I am told, Mr. Bassett, you are a fighting man; if so, come out and spread yourself." Edgar made one or two steps to one side, drew his pistol and fired, shooting Bassett in the right side, who fell forward, and died almost immediately. Bassett made no advance to Edgar; no weapon was seen about him; his hands were hanging by his side when he was shot. Some time after a pistol was picked up and handed to Baird by Tobe Hamilton. The watchman made no noise, and was trying to argue with Edgar."

James Baird stated, " that hearing very loud cursing and swearing at the mill, which was about one hundred and seventy-five yards from where he then was, he went to see about it. When he got there it was near dark, and he saw no one but Edgar and Taylor; that he told Edgar this was no place for a quarrel. Edgar raised his pistol at him three times, each time telling him to stand back. Witness told him that he had come to make peace, and to put up his pistol, and after a few words they shook hands. As they were walking out of the mill, Bassett came up, and after asking about the noise, told Edgar that this was no time or place for quarreling; that he wished he would go away, or something of the sort. Edgar remarked, " I am told you are a fighting man; if so, show yourself," and stepped

out and fired, and Bassett fell. Edgar had a large pistol in his hand. Witness saw no weapon in Bassett's hand, and no demonstration of attack on Edgar by Bassett."

Fred Hamilton stated, "that he and Summerlin were standing together talking, about fifty yards from the mill, when Bassett came by and asked what was going on at the mill, and Summerlin said it was Edgar and the watchman. Bassett said, "I must go and see about it." Summerlin went to the mill almost immediately after. As soon almost as he supposed Bassett had time to get to the mill, he saw the flash of a pistol, and soon Edgar and Summerlin came running by him. The foregoing was the testimony of the State."

"For the prisoner, it was proved by Tobe Hamilton, that on the night of the killing, he picked up a pistol at half-cock, at or near the place where Bassett was shot, and gave it to his uncle, Isaac Wells, but did not know whose it was; and by Isaac Wells, it was proven that he afterwards handed the pistol to Mr. Baird, but did not know who was the owner of it. David Summerlin stated, that he went to the mill soon after Bassett, and when he got there he saw several persons coming out of the mill, and Edgar in front of them; heard some one say (does not know whether Bassett or Baird) he did not want any fussing about the mill, and that there were other times to settle difficulties; heard Bassett say, " we've heard enough from you, dry up, go on," or something like that. Edgar said that he was going away peaceably, and was not to be driven away like a dog, or words to that effect, and then drew his pistol, stepped back a few steps, and said, " Now if you want to fight, step out ;" " stand back men," and fired. Witness "saw no weapon, or pistol about Bassett. It all occurred in a minute or two." Peter Cooper, a colored man, " stated that he saw Tobe Hamilton pick up a pistol at or near the spot where Bassett fell."

" The witness Summerlin, further testified, that Bassett on the way, while walking to the mill, asked him when he and Fred Hamilton were talking together, who was at the mill making such a noise; that witness replied that it was Edgar. Defendant's counsel asked witness what Bassett

said, and witness answered that Bassett said, "*I'll Edgar him.*" The solicitor objected to the question and answer. The court sustained the objection and excluded the evidence, because the declaration of Bassett was not part of the *res gestœ*, and the remark of Bassett had not been communicated to Edgar before the killing; to which ruling of the court, the defendant excepted." "The testimony before the court at the time of the ruling, showed that the killing took place within one or two minutes after the remark. The witness further testified that after Edgar had shot Bassett, Edgar and witness left hurriedly, going to witness' house, Edgar having his pistol with him."

"Among other witnesses for the State, ———, a colored man, was sworn and put under the rule of exclusion from hearing the testimony, as one of the State's witnesses. He was called into the court room by the solicitor, and as he approached within five or six feet of the witness stand, the State's counsel stated to the court that he would not examine him, but close the case for the State, when the witness retired. After the testimony of the State was closed, defendant insisted that the witness should be put upon the stand, and he should be permitted to examine and cross-examine him as the State's witness, for the purpose of enabling him to testify in his own behalf. To this the State objected, and the court sustained the objection, to which ruling the defendant excepted."

"This being all the evidence in the case, the court charged the jury, among other things: "That as a matter of law, I charge you, that the facts and circumstances of this case are not such as would tend to justify and impress the human mind with a reasonable belief that life was in danger, or a reasonable apprehension of great bodily harm," to which charge the defendant excepted. The defendant requested the court, in writing, to charge the jury, "that in order to convict the defendant of voluntary manslaughter, the jury must be satisfied that the defendant took the life of Bassett, in the heat of passion, after altercation with Duck and Baird, on the interference of Bassett, and without any malice to Bassett," which charge the court refused to give, and the defendant excepted.

4

The defendant requested the court to charge, in writing, "that if the jury believe the defendant killed Bassett in a sudden transport of passion, or heat of blood upon sudden combat, as without malice, it was but manslaughter," which charge the court refused to give, and the defendant excepted. And the defendant requested the court to charge the jury, in writing, "that the jury can not convict the defendant of murder, if they believed that after the accused had altercations with Duck and Baird, he slew Bassett in the heat of passion without malice," which charge the court gave with the qualification, that it must be taken and construed in connection with the general charge; to which qualification, the defendant excepted."

Defendant requested, in writing, the court to charge the jury, "that if the jury believe that the defendant was aroused to passion by the altercation with Duck and Baird, and that Bassett was about to advance on defendant with a pistol, and the defendant reasonably believed that he was in danger of his life, or limb, or great bodily harm from Bassett, and he believed there was a pressing necessity to take Bassett's life, to prevent such injury, defendant should be acquitted," which charge the court gave, with the qualification, that they must first believe from the evidence, that there was a combat, and that Bassett was participating, or about to participate in it; to which qualification the defendant excepted."

The errors assigned are: "1. Excluding the declarations of Bassett, a moment before the rencounter.

2. The refusal to permit the defendant to testify, after a man of color had been sworn against him.

3. The main charge given by the court, it being a charge on the facts, and in violation of § 2678, Revised Code.

4. The refusal of the court to give the first charge asked by the defendant.

5. The refusal of the court to give the second charge asked by the defendant, without qualification.

6. The refusal of the court to give the fourth charge asked by the defendant, without qualification."

ALEX. McKINSTRY, for prisoner.

JOSHUA MORSE, Attorney-General, contra.

Nat Gray et al. v. The State.

PECK, C. J.—1. There is nothing in the objections taken to the jurymen, Titcomb, John Gray and James Riley ; their examination showed they were householders, and that made them lawful jurymen in this case.—Revised Code, § 4092.

2. There is no error in sustaining the objection of the solicitor, to the answer of the witness Summerlin, to the question asked by appellant's counsel, and in excluding the answer from the jury—1. Because the answer, if it had not been excluded, should have had no influence with the jury. 2. Because it had not been communicated to the appellant, and he knew nothing of it at the time of the shooting.

3. The second assignment of error, to-wit: " the refusal to permit the defendant to testify after a man of color had been sworn on the part of the State," is not sustained by the record. It does not appear that he was offered to be sworn, as a witness, in his own behalf.

4. There is no error in the charge given to the jury by the court, to-wit: " That as a matter of law, I charge you that the facts and circumstances of the case are not such as would tend to justify and impress the human mind with a reasonable belief, that life was in danger, or a reasonable apprehension of great bodily harm."

It is insisted, that this is a charge on the facts, and for that reason, erroneous. We do not hold the charge complained of to be a charge upon the effect of the testimony, within the meaning of section 2678, of the Revised Code; but if it is, this court decides, in the case of *English's Ex'r v. McNair's Admr's*, 34 Ala. 40, that, " the appellate court will presume, unless the contrary is shown by the record, that the charge given by the primary court, on the effect of the evidence, was given on the written request of one of the parties."

The record, in this case, does not show whether this charge was, or was not given, on the written request of one of the parties, therefore, the appellate court, to sustain the judgment of the court below, will presume it was given on the written request of one of the parties. It is the every day's practice, where there is no conflict in the evidence, for courts to charge the jury, to find for one or the other of

the parties in the case, and such a charge is in one sense, a charge upon the effect of the testimony, yet it has never been held to be an error.

5. The first charge asked by the accused, does not contain a correct legal proposition, and was therefore properly refused. It was not necessary to convict the accused of voluntary manslaughter, that the jury should believe, that he took the life of Bassett in the heat of passion, after altercation with Duck and Baird, on the interference of Bassett, and without any malice towards Bassett.

The Code does not divide the crime of manslaughter into voluntary and involuntary manslaughter, but, into manslaughter in the first and second degree. The section of the Revised Code, 3659, says : " Manslaughter by voluntarily depriving a human being of life, is manslaughter in the first degree ; and manslaughter committed under any other circumstances, is manslaughter in the second degree." The charge, as applicable to this case, seems, in no sense, to have been an appropriate charge, and was therefore rightly refused.

6. The second charge asked, was not warranted by the evidence. The evidence no where speaks of any combat whatever. The charge was properly refused.

7. This charge, the third one asked, is in writing, and we think might have been refused altogether, without error ; the charge is speculative in its character, not properly growing out of the evidence, and well calculated to mislead the jury. It is quite true, there can be no murder without malice, express or implied. As the charge is framed, the jury would most probably have believed that the accused could not be convicted, unless there was express malice against Bassett ; and thus, they might have been deceived. The charge might have been refused as asked, without error ; but, being in writing, the court should not have added any qualification to it, and in doing so, fell into an error that must reverse the judgment.

8. The last charge asked was in writing. We think it should have been at once refused. Being in writing, it should have been given or refused, as asked. Section 2756, of the Revised Code, is plain, direct and peremptory, "must

be given or refused, in the terms in which they are written." The court has no right to add any qualifications. Although we do not approve of the law, yet, it is so written, and the accused had a right to insist upon the law as it is. If the court may add qualifications to charges so asked, the effect of the law is in reality defeated. For these errors, the judgment of the court below is reversed, and the cause remanded for another trial.