## BARBOUR COUNTY *vs.* HORN.

| 48 | 649 |
| 127 | 567 |

[ACTION AGAINST COUNTY FOR DAMAGE OCCASIONED BY FALL FROM DEFECTIVE BRIDGE.]

1. *Counties; for what may be sued.*—Counties in this State are incorporations, established for specific and defined purposes, and are liable only for wrongs committed in the use or misuse of the corporate powers conferred on them.
2. *Same; liability of, in regard to public bridges.*—Under our law, no general liability is imposed upon counties for injuries resulting from defective or unsafe condition of bridges, built for public use on the public highways.
3. *Same.*—The liability of counties in such cases is special, and defined by statute.
4. *Same; complaint against; what must show.*—A complaint against a county to recover damages for a fall resulting from the insufficiency or unsafe condition of a public bridge, must set forth a statement of facts which show the existence of this special liability. Among other things, it must be stated that no guaranty had been taken from the builder of the bridge, or that such a guaranty had been taken, and that the time during which it was to continue had expired before the occurrence of the injury complained of.
5. *Revised Code, section 1396 of; to what cases applies.*—Section 1396 of the Revised Code, which gives a right of action for injuries occasioned by defect in a bridge, &c., is applicable to a suit brought against a county

41

for such injuries, although the bridge may have been built before the passage of the act, if the injury complained of occurred *after* its passage.

APPEAL from the Circuit Court of Barbour.
Tried before Hon. J. McCALEB WILEY.

This was an action commenced by appellee, against Barbour county, to recover damages for a fall from a public bridge, &c.

The plaintiff in his complaint claimed $20,000 damages for injuries sustained by him, (which injuries are particularly set out,) which it is alleged resulted "directly and immediately from his fall from a certain bridge across Lick creek, in Barbour county, Alabama, which bridge, more than six years before said fall occurred, had been built and completed by contract with the court of county commissioners for said county, over said creek, and on the public highway in said county, leading from Glennville, in said county, to Clayton, in said county. Said bridge was built by the order of, and under contract with, said commissioners court; and plaintiff avers that the only guaranty, by bond or otherwise, which was required or authorized by said commissioners court of the undertaker or builder of said bridge was, that he, the undertaker or builder of said bridge, enter into bond, with good security, to keep said bridge in good passable order for said six years from the day of its completion; and that the aforesaid guaranty was required or authorized by an order of said commissioners court on the 16th day of August, 1852, and entered on its records. The plaintiff further avers, that more than six years had elapsed from the day of the completion of said bridge, before the fall or any of the grievances or injuries herein complained of and stated, occurred; and that the said guaranty by bond required or authorized by said commissioners court as aforesaid had expired by the lapse of more than six years from the day of the completion of said bridge, before said fall or any injury to plaintiff herein stated and complained of occurred; and that at the time said fall and injury to plaintiff herein stated and complained

of occurred, there was no valid or subsisting guaranty, by bond or otherwise, under any order or authority of said commissioners court or otherwise. The plaintiff avers, that after the expiration of the said guaranty referred to and mentioned in said order of said commissioners court, to-wit, on the 10th day of October, 1858, when plaintiff was crossing said bridge, in his buggy drawn by his horse, the said bridge was defective, unsound and unsafe, and the said horse became frightened at a hole in said bridge, and by backing with said buggy in consequence of such alarm, suddenly and without any fault on the part of the plaintiff, and without any ability on his part to prevent or avert its inevitable result, and in consequence of the said defective, unsound and unsafe condition of said bridge, precipitated said plaintiff and his said horse and buggy over and from said bridge into the stream below, thereby causing said plaintiff serious and permanent bodily harm, and producing such physical disability as to greatly impair the health of plaintiff; and to destroy his power of locomotion and his ability to do work and labor; and also greatly damaged his said horse and buggy, which were of great value, to-wit, of the value of one thousand dollars. By means of the premises, the plaintiff saith he hath been injured and hath sustained damages to the extent of twenty thousand dollars."

Due presentation of the claim and its disallowance in whole is also alleged.

The defendant demurred to the complaint on the following grounds:

"That the complaint does not deny that a bond or guaranty was executed and delivered by the contractor for the building of the bridge mentioned in the complaint, and by virtue of his said contract, and which bond was accepted from him under said contract, nor that such bond or guaranty had expired before the injury complained of occurred. The demurrer of the defendant was overruled, and the defendant excepted. Thereupon, the defendant plead, in short by consent, the plea of the general issue, with leave

to give in evidence any matter of defense or in bar which might be specially pleaded, and with like leave, by consent, for plaintiff to reply.

Plaintiff then read in evidence an order from the records of the court of county commissioners for Barbour county, in words and figures following, to-wit: "August 16th, 1852. Ordered, that Green Beauchamp, W. D. Horn, and Jacob Lowman be appointed commissioners to contract for the erection of a new bridge over Lick creek at the Beauchamp camp ground, requiring the undertaker to enter into bond with good security to keep the same in good passable order for six years from the day of its completion."

Plaintiff also read in evidence from said records another order, in words and figures following, to-wit: "First Monday in December, (6th day,) 1852. Ordered, that Hansford Dowling be allowed out of the county treasury the sum of sixty-six dollars for building a bridge on Lick creek at the camp ground.—See Report of Commissioners."

The plaintiff then offered in evidence a copy of the bond of Hansford Dowling (the original having been lost). This bond was dated December 6th, 1852, payable to W. R. Cowan, judge of probate, and his successors in office, and was in the penal sum of one hundred and thirty-two dollars, and was conditioned as follows:

"The condition of the above obligation is such, that whereas, the above bounden Hansford Dowling was the lowest bidder and undertaker of the building of a bridge over Lick creek, at the place known as Camp Ground Bridge, for the sum of sixty-six dollars; and whereas, said bridge having been completed in accordance with the specifications agreed on at the time of the letting; now, if the said Dowling should keep the said bridge in good repair for the term of six years, then this obligation to be null and void; otherwise to remain in full force and virtue in law. This the day and date above written.

"HANSFORD DOWLING,
"ELIAS DOWLING."

The deposition of the plaintiff was then read in evidence. It stated, in substance, that plaintiff's horse, hitched to a buggy, was passing quietly across the bridge over the creek near Beauchamp's mill in Barbour county, October 10th, 1858, when he suddenly attempted to whirl short round, and pitched the buggy off backwards, when he fell out of the buggy and his horse fell on him and caused the injury; he, horse and buggy, all fell about eight feet. "His horse was suddenly frightened, and he thinks the fright was caused by a hole in the bridge; the bridge was in very bad condition, having two holes in it; one a bad one, and the bright sunshine beaming through them doubtless caused the horse's fright. The bridge was about sixty feet long, and about ten or twelve feet high, and about twelve feet wide. It had no railing or banisters when the buggy was thereon. When the bridge was first built, it had railing and banisters, but they had mostly rotted down; there were a few pieces left scattered along. Good railing or banisters would, he thinks, have prevented his buggy from being thrown from the bridge. He received his injury, for which this suit is brought, on the 10th day of October, 1858. To the best of his recollection, in the last of August or first of September, 1852, the bridge was completed by the builder. He believes this was the time, from the fact that he was present and assisted Mr. Dowling in raising and completing the bridge."

Plaintiff also introduced the deposition of Maria Cooper, in which the fall and the nature of plaintiff's injuries were testified to. This witness further testified, that the bridge was an ordinary wooden bridge, without banisters or railings. The plaintiff introduced a physician and other witnesses, who proved the nature of his injuries, which were of an incurable and distressing nature; so much so that he would require nursing and care for the remainder of his life.

Hansford Dowling, a witness for plaintiff, testified, that he built the bridge in the fall of 1852, and it was finished about the last of September, 1852. He gave a bond, with his father, Elias Dowling, as security, in accordance with

his contract, and they made the bond before he got his pay from the county. Sixty-six dollars was the amount paid him. At the time plaintiff was injured, there was a good ford across the creek, near the bridge, which was traveled by persons on horseback and with teams, and it was a dry season of the year, and the water was low and the creek was easily forded. Several of the witnesses testified that travelers usually passed over the bridge at and about the time of the injury, although there was a ford near by that could be passed. The presentation of plaintiff's claim was proved.

The bill of exceptions then recites, that defendant then proved the loss from the files of the probate court of the report of Beauchamp and Lowman, the bridge commissioners, and plaintiff admitted that said report was dated December 6th, 1852, and in substance and in writing stated, that the bridge on Lick creek had been duly completed according to contract with Hansford Dowling, the builder thereof, and recommended that the court of county commissioners should receive the said bridge when bond was executed by said Dowling. Defendant then examined Green Beauchamp, who testified that he and Jacob Lowman, now deceased, were the commissioners who acted in letting out the contract for the building of the bridge over Lick creek, under appointment of the court of county commissioners. The letting was at the place where the bridge was to be built, and at public outcry. Hansford Dowling was the lowest bidder. They advertised the letting by posting notices throughout the neighborhood. He does not remember how long they advertised in this instance. He had frequently acted in the same capacity as a contract commissioner, and always gave reasonable notice beforehand, that the people in the neighborhood might be informed in the premises; and he thinks the notice in this instance must have been as long as three weeks before the letting. He does not recollect at what precise time the bridge was finished, but he and Lowman acted promptly in reporting the matter to the commissioners court, after completion of the bridge.

It further appeared in proof, that the road on Lick creek, and upon which said bridge was built, was a second grade road.

This was substantially all the evidence.

The court charged the jury as follows:

1. That the court of county commissioners were authorized to require a bond or guaranty from bridge builders, with certain stipulations specified in the statutes, and that bonds thus executed would protect the county against suit for damages occuring while they are in force and unexpired; but the bond read in evidence in this case was not such a bond as the court of county commissioners were authorized to receive, and did not protect the county against the suit of the plaintiff in this case.

2. If the court of county commissioners never required or authorized any bond or guaranty in relation to the bridge mentioned in the complaint, other than is specified or mentioned in the said order of August 16th, 1852, introduced in evidence; and if the said bridge was built under and by virtue of said order of August 16th, 1852; and if, after being so built and accepted by the authority of the court of county commissioners, the plaintiff was injured by a fall from the said bridge, as alleged in the complaint; and if the injury occurred as stated in the complaint, then upon these facts, the bond of December 6th, 1852, introduced in evidence, is no bar to a recovery of damages in this action by the plaintiff.

3. If the plaintiff, in driving his horse and buggy on the bridge at the time of the alleged injury to him, acted with common and ordinary caution, then he is not guilty of such negligence or fault, as of itself to prevent him from recovering, if in other respects he shows himself entitled to recover.

4. If the substance of the allegations of the complaint is proved by the evidence, the mere fact, if it be a fact, that plaintiff did not use the utmost possible caution in driving on said bridge at the time of the alleged injury, can not prevent him from recovering. The law did not require from

him the utmost possible caution, but only ordinary care and caution.

5. Although the law does not specially require that bridges built under contract have hand railings, yet it requires them to be "safe for travel;" and if the jury believe hand railings were necessary for such safety, then they are required.

To the giving of each of these charges, defendant duly excepted.

Defendant then requested the following written charges:

1. That bridges erected by contract with the court of county commissioners, with a guaranty by bond or otherwise, under section 1203 of the Code of Alabama, are not required by law to be of any prescribed width.

2. That if the evidence shows that the bridge from which the plaintiff's alleged injury was received was built during the year 1852, then section 1203 of the Code of Alabama does not apply to the case.

3. That section 1203 of the Code of Alabama, which came into force and effect on the 17th day of January, 1853, was not in force during the year 1852.

4. That bridges built under order of, or contract with the court of county commissioners during the year 1852, are not governed by the law of the old Code of Alabama, which took effect and went into operation on the 17th day of January, 1853.

5. If the jury believes from the evidence that the bond read to the jury, dated on the 6th day of December, 1852, was executed by Hansford Dowling and Elias Dowling, and delivered to and received by the court of county commissioners, and that upon the delivery of the bond the commissioners court passed the order for payment to Hansford Dowling, the builder of the bridge, of the sixty-six dollars mentioned in the order of that court, then the bond was a valid guaranty, and protected the county against any suit for injury occurring from any attempted use of the bridge so long as the stipulation in the bond was in force and unexpired.

6. If the injury happened within six years from the 6th day of December, 1852, the date of the bond read in evidence, the plaintiff can not recover, if the jury believe from the evidence that the bond was executed by the bridge builder, and accepted by the commissioners court, as a condition on which the commissioners court ordered payment to him of the contract price for building the bridge.

7. If the injury happened within six years from the time the bridge was completed, and before bond read in evidence had expired, the plaintiff can not recover, if the jury believe from the evidence that the bond was executed by the bridge builder, and accepted by the commissioners court, as a condition on which the commissioners court ordered payment to him of the contract price for building the bridge.

To the refusal to give each of these charges, the defendant duly excepted.

D. M. SEALS, with whom were COCHRAN, JOHN GILL SHORTER, and WILLIAMS & FOSTER, for appellant.

PUGH & BAKER, WOOD, and RICE, contra.

[No briefs reached Reporter.]

PETERS, J.—Counties, in our system of government, are not the same that they were at common law. They are purely statutory creations, and are incorporated for special purposes. Their liabilities grow out of their corporate powers, and for wrongs committed in the use or misuse of these powers, they are subject to be sued.—Rev. Code, § 897; *Autauga County v. Davis*, 32 Ala. 703. But the weight of authority and principle are opposed to subjecting them to any common law liabilities.—*Russell et al. v. County of Devon*, 2 Term R. 667; *Mitchell v. Tallapoosa County*, 30 Ala. 130; *Van Eppes v. County Commissioners of Mobile*, 25 Ala. 460; 2 Kent, 274, margin, and cases cited in appellant's brief; *Barbour County v. Bronson*, 36 Ala. 362, 366. Such corporation is an artificial person, "invisible, intangible, and existing only in contempletion of law."

It can only act through its agents, and these must confine their acts within the limits of their powers in order to bind the county. That is, such agents can do only what the county could do for itself had it the capacity to act without their aid. This is the law of all agencies with special powers.—*Golding v. Merchant & Co.*, 43 Ala. 705; *Waring v. Henry et al*, 30 Ala. 721; 2 Kent, 620, 621.

In this case, the agency of the corporation is conferred upon the court of county commissioners to contract for the building of bridges in certain cases, but no power to prevent the injury complained of.—See *Smoot v. Wetumpka*, 24 Ala. 112; *Barbour County v. Brunson*, 36 Ala. 362. The law does not impose upon the county a general liability for injuries occasioned by the insufficiency of all the public bridges built within its limits for the passage of travelers, but only a special liability. The complaint, then, must show such a statement of facts as brings the case within this special liability. Among these facts it must be alleged that no guaranty was taken from the builders of the bridge, or that such guaranty was taken, and that the time stipulated for its continuance had expired before the injury complained of was inflicted. One of these alternative facts must be stated along with the other necessary allegations of the complaint, in order to show a right of action.—Rev. Code, § 1396; *Covington County v. Kinney*, 45 Ala. 176. I quote below so much of the statute as shows the necessity of the one or the other of these allegations. It is in these words: "When a bridge or causeway has been erected by contract with the county commissioners, with a guarantee, by bond or otherwise, that it shall continue safe for the passage of travellers and other persons for a stipulated time, any person injured in person or property before the expiration of such period by defect in such bridge or causeway, may sue in his own name on the bond or other guaranty, and recover damages for the injury; and if no guaranty has been taken, or the period has expired, may sue and recover damages of the county."—Rev. Code, § 1396 ; Code § 1203. The complaint in this case bases the right of re-

covery on the latter alternative : That is, that a guaranty was given as required by the statute, and the period of time stipulated therein, during which the bridge should continue safe for the passage of travellers and other persons, had expired before the plaintiff was injured as alleged in this complaint. Such a complaint is sufficient.—*Barbour County v. Brunson, supra.*

It is said by the learned counsel for the appellant that to apply the statute found in the Code to this case, is to give it a retrospective effect; which is not usual with such enactments. I think a more careful study of this statute obviates this objection. The law is one providing a remedy for injuries which have accrued in a certain manner. It is to be applied to such injuries as have accrued since its passage. In such an application it cannot be said to be construed so as to act retrospectively. This could only be when the injury happened before its passage. Such is not the case here. Here the remedy is applied to injuries which have arisen since the passage of the act, and not to such as might have arisen before its passage.—Smith's Com. p. 289, § 149; 2 Bour. Law Dict. 12th ed. p. 475— *word* RETROSPECTIVE ; *Satterlee v. Matthewson*, 2 Pit. 380. The statute referred to went into effect on the 17th day of January, 1853, and the injury complained of is stated to have happened on the 10th of October, 1858. Whether the section of the Code above mentioned applies to a case like this, is to be referred to its language. That most clearly comprehends this case. And the reason and purpose of the law also concur in this construction as strongly as they could in the case of a bridge contracted to be built since the passage of the enactment giving the remedy. The purpose of the law would be the same in either case, a legislative effort to secure the safety of the citizen against injuries occasioned by insufficient and unsafe bridges on the highways of the State. When this case was here before, it seems to have been taken for granted that the county commissioners had authority to contract for the building of the building in question, and to take the guaranty re-

ferred to in the Code.—*Barbour County v. Horn*, 41 Ala. 114. The law creating the powers of the commissioners court is somewhat obscure before the Code. A court called the commissioners court of revenue and roads was established in 1821, and, among other things, its jurisdiction was made to comprehend "all *powers* in relation to roads, bridges, highways, ferries and causeways, which are at present given to and *exercised* by the orphans' court."—Toulmin's Laws of Ala. p. 200, §§ 28, 29, 30. At the time the county court of county commissioners were "*authorized* and *required* to contract and agree for the building, keeping and repairing" of bridges within the county limits.—Toulmin's Laws of Ala. p. 395, § 13. This continued to be the law up to the compilation of Clay's digest of the laws of Alabama in 1843, which included the laws then in force at the close of the session of the General Assembly of February, 1843.— Clay's Dig. 149, § 1; Clay's Dig. p. 511, § 19; Aikin's Dig. p. 86, § 1; Aikin's Dig. p. 36, § 24.

This was then the law before the adoption of the Code and up to that event. But all this law was not carried into the Code, and, consequently, all that is not found in that compilation is repealed.—Code, § 10. The law of the Code restricts the powers of the commissioners court to contracting for the building of toll bridges, in which a guaranty is required and none others.—Code, §§ 1189, 1191, 1196, 1197; Rev. Code, §§ 1381, 1383, 1389, 1390.

The section of the Code above quoted which makes the county liable for injuries which accrue from the unsafe condition of bridges built by contract with the county commissioners, refers as well to bridges that might have been built before its passage as to bridges that might be built afterwards, as will be seen by inspection of the language of the statute itself. It clearly comprehends all bridges built under contract with the county commissioners, whether they be toll bridges erected since the proclamation of the Code, and under its provisions, or to free bridges established before the Code went into effect. At the same time it is perfectly clear that the commissioners

court is one of very limited jurisdiction. All its powers are statutory.—Shep. Dig. p. 511, § 1. Then this court cannot bind the county, except in the manner and to the extent prescribed in the statute conferring the authority to act. But before the Code, and until it went into effect, as the law then existed, the commissioners court could contract for the building of a bridge. All the terms of this contract were left to the court. The court could then proceed in the matter of the contract according to its own discretion. Any terms which would amount to a rational exercise of so general a power would be sufficient.— *McClure's Executors v. Spotswood*, 19 Ala. 165. The commissioners might dictate the terms of the contract and all its incidents. They might demand and take a guaranty for the safe passage of travellers and other persons over the bridge, to continue for such length of time as they might be able to agree upon, with the builder, or they might omit to demand or take such guaranty altogether. They might also fix the payee in the bond when the guarty was by bond. This might be any competent person not forbidden to enter into contracts. I therefore think that the bond in this instance is sufficient as a guaranty to bring the case under the influence of the section of the Code above quoted.—Code, § 1203; Revised Code, § 1396; *Barbour County v. Horn*, 41 Ala. 114.

This disposes of all the questions raised upon the record, except the charges given and refused by the court on the trial below. There were twelve of these charges, five of which were given and seven asked and refused. And the ruling of the court was excepted to by the defendant below, in both instances.

The proof tends to show that the bridge in controversy was erected by contract with the county commissioners of Barbour county, between the 16th day of August, 1852, and the 1st day of September of the same year. The erection of the bridge costs sixty-six dollars. An allowance for this sum was made on the 6th day of December, 1852, by the commissioners court of said county. The indemnity or

guaranty taken for the safety of the bridge and keeping it in good repair was by bond, in the penalty of one hundred and thirty-two dollars, which was double the cost of its erection. It was made payable to "William R. Cowan, judge of probate court, and his successors in office." It bears date the 6th day of December, 1852. "The condition is expressed in the words following, to-wit: "The condition of the above obligation is such, that whereas, the above bounden Hansford Dowling was the lowest bidder and undertaker of the building of a bridge over Lick creek, at the place known as the camp ground bridge, for the sum of sixty-six dollars; and whereas, said bridge having been completed in accordance with the stipulations agreed on at the time of letting; now, if the said Dowling should keep the said bridge in good repair for the term of six years, then this obligation to be null and void; otherwise to remain in full force and virtue in law. This the day and date above written." The testimony also tends to show that the bridge was in unsafe condition and not in good repair, and that the plaintiff Horn, in attemping to pass it on the 10th day of October, 1858, was thrown from it with his horse and buggy and very seriously injured.

Neither the bond for the guaranty nor the order of the commissioners court for the allowance of the sixty-six dollars, the price to be paid for the erection of the bridge, show with certainty when the period during which the bridge was to be kept in good repair expired. The first charge given to the jury assumes that the bond was void— or that the period of six years during which the bridge was to be kept in good repair, had expired. In either sense the charge was incorrect. The bond was not invalid, as has been above shown, and a charge that the period of six years covered by the guaranty had expired, is a charge upon the effect of the evidence, without being so required by one of the parties. This is error.—Revised Code, § 2678; *Edgar v. The State*, 43 Ala. 45.

The second charge given is erroneous for a like reason. It also assumes that the bond was void, or that the guar-

anty had expired. This was also a charge upon the effect of the evidence, and erroneous unless it appears that such a charge was requested by one of the parties.—43 Ala. 45, *supra.*

The third and fourth charges given and excepted to were free from error. Travel is an ordinary and common business of the country. All persons, young, middle aged and old, may engage in it. Then, such diligence as would reasonably be required in the ordinary business of life would be sufficient. These charges do not go beyond this.—*Owners of Steamboat Farmer v. McCraw,* 26 Ala. 189, 203.

The evidence tends to show that the bridge was built with balustrades or hand-railing, and was so accepted by the commissioners court. Such fixtures then were deemed necessary for its safety when it was built, as they would hardly have been put up for mere ornament. The bond required and given, was that the bridge should be kept in good repair for a period of six years. As the security of the bridge for passage was a question in the case, and there was evidence tending to show the destruction of the hand-railing, the charge upon this portion of the evidence was in conformity with the law. It was not erroneous. This was the fifth charge.

The first charge asked by the defendant below was properly refused. It was not a charge upon the evidence. It was abstract. The proof shows that the bridge was not erected by contract under section 1203 of the Code of Alabama. It was erected before the Code went into operation. And this section of the Code was not in force when the bridge was contracted to be built. The same may be said of the second charge asked and refused. It is not a correct statement of the law applicable to the testimony. This results from what has already been said upon the statute providing a remedy in a case like this. The third and fourth charges should not have been given as asked by the defendant below. They show no matter of law which is a legal defense to the action. Their refusal could

not operate as an injury to the party asking them. The action of the court complained of must not only show error, but it must show injury also; else the cause will not be reversed. Error and injury must both combine in order to justify a reversal.—Shep. Dig. p. 568, § 82; *Gregory v. Walker*, 38 Ala. 26; *Bell v. Chambers*, 38 Ala. 660; *Hawkins v. Dumas*, 41 Ala. 391.

The fifth charge asked and refused should have been given. It was a correct statement of the law applicable to the evidence; and the same may be said of the seventh charge asked and refused. They contain certain correct expositions of the law applicable to the evidence.—*Barbour County v. Brunson*, 36 Ala. 114; Revised Code, § 1396.

The sixth charge asked and refused should not have been given. The date of the bond is not necessarily the time at which the period of the guaranty should have its commencement. This was a bond entered into before the Code took effect. Such a bond might fix the period of commencement of the guaranty at the date of the bond, or it might be fixed independently of the bond, at the completion and acceptance of the bridge, or at such time as might be agreed upon by the parties. This was a fact, then, not without dispute. The law did not settle it. The charge takes it from the jury, and as such it is an invasion of their province. Such charge should be refused.—Shep. Dig. p. 459, § 13.

For errors above pointed out, the cause must be reversed and remanded for a new trial, and the judgment of this court will be entered accordingly.

NOTE BY REPORTER.—The opinion in this case was delivered at the January term, 1871. Both the opinion and the transcript in the case were misplaced in some way in the Clerk's office, and did not come into the Reporter's hands in time to be reported earlier.